UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 19-CIV-24638-GRAHAM/MCALILEY

ANDRE L. MOODY,

      Plaintiff,

v.

MIAMI-DADE COUNTY, ANTHONY
YEBER, and JOHN JOHNSON

      Defendants.

_____/

## DEFENDANTS' JOINT MOTION FOR FINAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Defendants MIAMI-DADE COUNTY (the "County"), ANTHONY YEBER ("Captain Yeber") and JOHN JOHNSON ("Chief Johnson") file this motion for entry of final summary judgment in their favor against Plaintiff ANDRE MOODY. Plaintiff is currently employed by the Miami-Dade County Department of Corrections and Rehabilitation ("MDCR") as a corporal assigned to the Monitored Release Bureau ("MRB"), a specialty assignment responsible for supervising offenders outside of the jail facilities who are required to wear a GPS ankle bracelet.  On April 17, 2018, after repeated corrective counseling and being placed on a plan of action to correct Plaintiff's negative job performance and failure to follow instructions from his supervisors, Plaintiff was transferred out of the MRB by Assistant Director Cassandra Jones (African-American) upon the recommendation of Lt. Anthony Yeber (White Hispanic) and Chief John Johnson (African-American). Upon being transferred, Plaintiff filed a Union grievance and on May 23, 2018, Department Director Daniel Junior (African-American) granted Plaintiff's request to rescind the transfer and Plaintiff was returned to the MRB **with no loss of pay or benefits**.

In his 12-count Second Amended Complaint ("SAC") [ECF No. 36],[1] Plaintiff (who is African-American) asserts claims of race discrimination, hostile work environment, and retaliation under Title VII, 42 U.S.C. § 1983, and the Florida Civil Rights Act. As discussed below, Plaintiff

_____

[1]  In an order entered on July 24, 2020, the Court dismissed Counts XI, XII, XV, and XVI in their entirety, as well as the retaliation claims in Counts XIII and XIV and the punitive damages claims against the County.  *See* Order [ECF No. 50] at 7-8.

fails to establish a *prima facie* case of discrimination or retaliation on any basis, and fails to establish that the County's legitimate reasons for its actions are a pretext for discrimination or retaliation. In addition, some of Plaintiff's claims must fail because they are outside the scope of his EEOC Charge and are time-barred.

## ARGUMENT

**I.      THE COUNTY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S 42 U.S.C. § 1983 CLAIMS IN COUNTS IX AND X.**

Counts IX and X are claims against the County under 42 U.S.C. § 1983 alleging that Plaintiff was subjected to discrimination and hostile work environment because of his race.  (SAC ¶¶ 121-157.)  Plaintiff alleges that his § 1983 claims against the County are based on a custom, policy or practice that treated African-American employees less favorably than non-African American employees in the terms, conditions, and privileges of employment.  (SAC ¶¶ 125-129, 143-147.)  As discussed below, Plaintiff fails to establish a jury issue.

To establish municipal liability under § 1983, Plaintiff must show that: (1) a constitutional right was violated; (2) the municipality had a custom or official policy that constituted deliberate indifference to her constitutional right, and (3) the policy or custom caused the violation of her constitutional right. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *see also Skop v. City of Atlanta*, 485 F.3d 1130, 1145 (11th Cir. 2007) ("it is by now axiomatic that in order to be held liable for a §1983 violation, a municipality must be found to have ***itself*** caused the constitutional violation at issue; it cannot be found liable on a vicarious liability theory").

**A.  No Constitutional Right or Federal Statutory Law Was Violated**

Plaintiff's cause of action may only survive if he can demonstrate that a violation of a constitutional right has occurred. If not, then there can be no *Monell* liability against the County. *Redd v. Conway*, 160 F. App'x 858, 861 (11th Cir. 2005) (affirming district court's entry of summary judgment for municipality on *Monell* claim based upon, among other things, an earlier finding that the plaintiff suffered no constitutional violation).

It is well-settled that "analysis of a disparate treatment claim under § 1983 is identical to the analysis under Title VII where the facts on which the claims rely are the same." *Boone v. City of McDonough*, 571 F. App'x 746, 751 (11th Cir. 2014) (citing *Crawford v. Carroll,* 529 F.3d 961, 970 (11th Cir. 2008)).  Specifically, the court uses the *McDonnell Douglas* test. *Collier v. Clayton Cty. Cmty. Serv. Bd.*, 236 F. Supp. 2d 1345, 1370–71 (N.D. Ga. 2002), *aff'd sub nom. Collier v. Clayton Cty.*, 82 F. App'x 222 (11th Cir. 2003) (citing, *e.g., Pennington v. City of Huntsville*, 261 F.3d 1262,

1265 (11th Cir.2001)).  *See also Painter v. Fulton Cty., Georgia*, No. 1:08-CV-1989-TCB-RGV, 2010 WL 11493335, at *31 (N.D. Ga. Aug. 4, 2010), *report and recommendation adopted,* No. 1:08-CV-1989-TCB, 2010 WL 11493525 (N.D. Ga. Aug. 26, 2010) (granting summary judgment for the County on Plaintiff's employment retaliation claims because "when § 1983 is used as a parallel remedy for Title VII violations, the analysis for both causes of action is the same.").

Thus, for the same reasons fleshed out in Sections II & III below, Plaintiff has failed to establish a constitutional violation in the form of discrimination or retaliation.  For this reason alone, Defendants are entitled to summary judgment on Counts IX, X, XIII, and IV.

**B.  No County Custom or Practice**

In addition to establishing a constitutional violation, the plaintiff is further tasked with proving that the cause of the violation was an official policy or practice, which may only be established by proving either: "(1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county."  *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003). As discussed below, Plaintiff fails to establish a ***unofficial custom or widespread practice***.

"Because a county rarely will have an officially-adopted policy of permitting a particular constitutional violation," most plaintiffs must prove that their injuries were the result of an unofficial custom or practice.  *Grech*, 335 F.3d at 1330.  Further, Plaintiff can only proceed to demonstrate an unofficial custom or practice of the county "through the repeated acts of a final policymaker for the county."  *Id.* at 1329.  When a policy is not formally approved by a policymaker, municipal liability may result from the showing of a persistent and widespread practice that "although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law," *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988). For a practice to be sufficient to sustain municipal liability under § 1983, it must be sufficiently permanent and well settled such that it is "deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Brown,* 923 F.2d at 1481. Consequently, seemingly random, unrelated acts or isolated incidents have been insufficient to establish an official custom or to place final policymakers on constructive notice that such a custom potentially exists. *See, e.g., Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) ("***Eleven incidents*** . . . cannot support a pattern of illegality in one of the Nation's largest cities and police forces."); *Prieto v. Metro. Dade County*, 718 F. Supp. 934, 938-39 (S.D. Fla. 1989)

3

(holding that "**four isolated incidents** . . . fall *far short* of proving a persistent and widespread practice sufficient to establish a practice or custom") (emphasis added); *Buzzi v. Gomez*, 62 F.Supp.2d 1344 (S.D.Fla. 1999) *("[F]ive incidents* which occurred over a three-year period…, even if they were predicated on discrimination, are insufficient to substantiate the existence of a widespread custom violative of § 1983.").

### C.   No Substantiated Complaints of Discrimination or Retaliation

In addition, the Eleventh Circuit has also emphasized that *the instances cited must have proven to be meritorious*. *Brooks v. Scheib,* 813 F.2d 1191, 1193 (11th Cir. 1987) (finding that 10 prior *complaints*, all of which were reviewed and found to be *without merit*, did not place officials on constructive notice of past misconduct). "Indeed, the number of complaints bears no relation to their validity." *Id.*   Because some complaints are likely without merit, mere recitation of the number of complaints filed against an employer does not suffice to prove an unconstitutional policy or custom. *See Grech*, 335 F.3d at 1330; *see also Anderson v. Jackson*, 2009 WL 2601388, *5 (M.D. Ala. Aug. 21, 2009); *Artiles v. Vitanza*, 2009 WL 2426259, *29 (D.N.J. Aug. 6, 2009). In fact, "[i]n judging the scope or existence of a pattern of constitutional violations, the Court requires *more than evidence of accusations*." *Doe v. Miami-Dade Cty.*, 797 F. Supp. 2d 1296, 1310 (S.D. Fla. 2011) (emphasis added).   Complaints alone are inconsequential.   *See Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) ("[T]he mere existence of previous citizens' complaints does not suffice to show a municipal custom of permitting or encouraging excessive force.") (citing *Rogers v. City of Little Rock*, 152 F.3d 790, 799 (8th Cir. 1998) (emphasis added)). If a municipal custom of condoning discrimination or retaliation could be established merely by cataloguing all allegations of such misconduct over a several-year period, "then practically every large metropolitan police force, it would seem, could be targeted for liability." *See Carter v. District of Columbia*, 795 F.2d 116, 123 (D.C. Cir. 1986).

Moreover, MDCR is a "large metropolitan [department]" and the fact that some County employees may have been the subject of complaints cannot serve to establish a County custom of condoning such behavior. *See id.*; *see, e.g., Doe*, 797 F. Supp. 2d at 1310 ("The Court does not find that 51 sexual misconduct claims over four years—in an extremely large police force, and including many claims that were never supported—establishes a widespread pattern of constitutional abuses directly caused by the County's failure to implement different screening measures.") (emphasis added).

4

Here, even if Plaintiff could point to several discrimination *complaints*, complaints alone are sufficient as a matter of law.  The mere fact that Plaintiff or other corrections employees made *unsubstantiated* complaints of discrimination, or that Plaintiff *disagrees* with the outcome of the investigations, does not further a claim against the County for an unofficial policy of discriminating against black employees.  Plaintiff is unable to demonstrate that any of the incidents or complaints were found to be incidents involving constitutional violations, as opposed to mere non-meritorious allegations of discrimination.

### D.  No Involvement of the County's Final Policymaker

The Plaintiff must also allege approval or awareness of the policy or custom *by a final policymaker*.  *See Pino v. City of Miami*, 315 F. Supp. 2d 1230, 1244 (S.D. Fla. 2004) (holding that "a plaintiff must identify an officially promulgated 'policy,' or an unofficial 'custom' or practice *shown through the decisions of a final policymaker*, that caused the plaintiff's (constitutional or federal statutory) injury." (emphasis added)).  It is axiomatic that a county or municipality can only act through its final policymakers for purposes of section 1983. *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997).

The County's current charter plainly establishes that the Board of County Commissioners and the Mayor are the final policymakers for Miami-Dade County.[2]  The Supreme Court has expressly held that such designations of authority are binding.  *See Praprotnik*, 485 U.S. at 126 ("[A] federal court would not be justified in assuming that municipal policymaking authority lies

---

[2]      Prior to the County's adoption of the Strong Mayor Amendment in January 26, 2007, which effectively transferred the authority previously held by the County Manager to the County Mayor, Courts in the Southern District of Florida had consistently held that final policymaking authority for the County (including the County's police department) rested *solely* with the Board of County Commissioners (the "Board") and the County Manager.  *See Moore*, 502 F. Supp. at 1230 n. 4 ("The final policy making authority for Miami-Dade County rests solely with the Board of County Commissioners or the County Manager.") (citations omitted); *Rosario v. Miami-Dade County*, 490 F. Supp. 2d 1213, 1223 (S.D. Fla. 2007) (Ungaro, J.) (holding that the "Board of County Commissioners is the lawmaking and policymaking body of Miami-Dade County," and therefore possess the final policymaking authority).  Since the change in the Charter, however, the final policy making authority previously held by the County Manager now resides with the County Mayor.  Similar reasoning applies to department directors who, like the County Manager, are appointed by the Mayor and approved by the Board of County Commissioners. *See Cason Enters., Inc. v. Metro. Dade County,* 20 F. Supp. 2d 1331, 1344 (S.D. Fla. 1998) (Graham, J.) (holding that "the individual defendants in their capacities as department directors are not final policymakers because their decisions are subject to review"); *accord Gomez v. Metro Dade County,* 801 F. Supp. 674, 678 (S.D. Fla. 1992) (Highsmith, J.).

somewhere other than where the applicable law purports to put it."); *accord Wilson ex rel. Wilson*, No. 04-23250-CIV-MOORE, 2005 WL 3597737, at *8 (S.D. Fla. Sept. 19, 2005).  Further, the identity of a government's final policymaker is a question of law, *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989), resolvable by the court on a motion to dismiss. *See, e.g., Wilson*, 2005 WL 3597737, at *8 (dismissing claims against the County because the plaintiff had failed to allege wrongdoing by the actual final policymaker).

In addition, the Southern District of Florida has consistently interpreted the County Charter to solely designate the Board of County Commissioners and the Mayor as 'policy makers' for the purposes of §1983 municipal liability. *See Moore v. Miami-Dade County*, 502 F.Supp.2d 1224, 1230 n.4 (S.D. Fla. 2007) (Gold, J.); *Buzzi,* 62 F.Supp.2d at 1359-1360; *Wilson,* 2005 WL 3597737 at **8-10. Therefore, Plaintiff would have to establish sufficient facts to evince that either the Board of County Commissioners or County Mayor endorsed, tacitly authorized or was deliberately indifferent to a policy or practice in order to sustain a *Monell* claim against the County.  Plaintiff is unable to do so.

Here, Plaintiff fails to allege or prove that the Board of County Commissioners and the County Mayor was on notice of any ***sustained*** allegations of discrimination or retaliation against black employees.  Hence, there is no way the Commission or Mayor can be charged with knowledge of and the failure to stop any such instances.  *Moore*, 502 F. Supp. 2d 1224, 1231-32 (S.D. Fla. 2007) ("Nowhere in the Complaint does the Plaintiff allege that the County's final policymakers ***knew and failed to stop an unofficial custom or practice*** as required by law to maintain a section 1983 claim against the County.").

In the employment context, the Eleventh Circuit has consistently rejected similar attempts to hold local government entities liable under § 1983 for the actions of individual officials.  *See Scala*, 116 F.3d at 1399 (holding that the City could not be held liable under § 1983 because the city manager and other department director were not the City's final policymakers with regard to their termination decision); *Hill v. Clifton*, 74 F.3d 1150 (11th Cir. 1996) (holding that held that the city was entitled to judgment as a matter of law because the police chief and the other named supervisors were not the city's final policymakers with respect to their employment decisions); *Maschmeier v. Scott*, 269 F. App'x 941, 943 (11th Cir. 2008) (holding that a county sheriff's office could not be held liable for the sheriff's retaliatory discharge of an employee because the sheriff's actions were subject to the government's rules against retaliation and to meaningful review by

others). *Accord, Alexander v. Fulton County*, 207 F.3d 1303, 1350 (11th Cir. 2000) (county sheriff was not final policymaker in employment matters because her decisions were confined by county rules); *Morro v. City of Birmingham*, 117 F.3d 508, 510 (11th Cir. 1997) (police chief not a final policymaker because her authority over employment matters was confined by city rules); *Gattis v. Brice*, 136 F.3d 724 (11th Cir. 1998) ("A policymaker's approval of an unconstitutional action can constitute unconstitutional policy only when the policymaker approves a subordinate's decision *and the basis for it*.") (emphasis in original).

The S.D. Fla. Court has specifically (and repeatedly) held that *Miami-Dade County's* various department heads and other administrators do not have final policymaking authority over County employment matters. *Buzzi*, 62 F. Supp. 2d at 1359-60 (holding that the County could not be held liable under § 1983 for its police department director's and supervisors' allegedly discriminatory employment decisions because they did not have final policymaking authority over employment matters); *Lawrence v. Metro Dade County,* 872 F. Supp. 957, 964 (S.D. Fla. 1994) (holding that the County could not be held liable under § 1983 for the allegedly discriminatory acts of its police department director and other police supervisors, even though the director had "the authority to establish specific employment policies for MDPD, [because] her decisions are clearly constrained by ordinances and resolutions passed by the Board of County commissioners…"); *Jones v. Miami-Dade County*, 2005 WL 2456884, at *6 (S.D. Fla. April 7, 2005) (holding that the County could not be held liable for the allegedly discriminatory and retaliatory actions of its Department of Corrections Director); *Gomez v. Metro Dade County*, 801 F. Supp. 674 (S.D. Fla. 1992) (holding that the County could not be held liable under § 1983 for the allegedly discriminatory employment decisions of its Housing and Urban Development Department Director because he did not have final policymaking authority over County employment matters); *Moreland v. Miami-Dade County*, 255 F. Supp. 2d 1034 (S.D. Fla. 2002) (holding that the County could not be held liable despite the plaintiff's assertion "that the County maintains several discriminatory policies and customs," because the County Charter makes clear that "it is the policy of the County to make employment decisions without regard to 'race…national origin…ancestry…and/or place of birth.'").

For the same reasons that this Court concluded that the County cannot be held liable under § 1983 for the employment decisions of individual County administrators and employees/agents in cases such as *Buzzi, Jones, Gomez, Lawrence,* and *Moreland*, it should also conclude that the County

cannot be held liable for the individual employment decisions of MDCR Director Daniel Junior, Assistant Director Cassandra Jones, Chief John Johnson, Lt. Anthony Yeber, or any of Plaintiff's other supervisors in this case. There is simply no evidence that the County Commission or Mayor had knowledge of an unofficial custom or policy of discriminating against its black employees, and thus, Plaintiff's injuries cannot have been inflicted by such practice(s).

**II. DEFENDANTS ARE ENTITLTED TO SUMMARY JUDGMENT ON PLAINTIFF'S RACE DISCRIMINATION AND HOSTILE WORK ENVIRONMENT CLAIMS UNDER TITLE VII, THE FCRA, AND 42 U.S.C. § 1983 IN COUNTS II, III, IV, V, XIII, AND XIV.**

**A. Plaintiff Cannot Establish A *Prima Facie* Case of Race Discrimination.**

In addition to his *Monell* claims, Plaintiff also alleges race discrimination and hostile work environment against the County under Title VII and the FCRA (Counts II, III, IV, and V), and against Yeber and Johnson under 42 U.S.C. § 1983/Equal Protection Clause (Counts XIII and XIV). The analysis of disparate treatment claims under Title VII, the FCRA, and the Equal Protection Clause are identical where the facts on which the claims rely are the same. *Crawford*, 529 F.3d at 970; *Jiles v. United Parcel Serv., Inc.*, 360 F. App'x 61, 62 (11th Cir. 2010) (citing *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998); *Wilbur v. Correctional Servs. Corp*, 393 F.3d 1192, 1195 n.1 (11th Cir. 2004) (noting in case arising under both Title VII and FCRA that no independent analysis of claim under FCRA is necessary).

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin..." 42 U.S.C. § 2000e-2(a)(1). When a Title VII plaintiff's employment discrimination claim is based on circumstantial evidence, the Eleventh Circuit applies the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to evaluate the claim at the summary judgment stage. *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1217 (11th Cir. 2019)). Under that framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by showing that: (1) he belongs to a protected class; (2) he was qualified to do the job; (3) he was subjected to adverse employment action; and (4) his employer treated similarly situated employees outside his class more favorably." *Id.* at 1220–21.

For the purposes of this motion, Defendants do not dispute that Plaintiff satisfies the first and second prongs of the test because he is a member of a protected class (black), and was

minimally qualified as a correctional corporal.  Plaintiff, however, fails to satisfy the third prong of the *prima facie* test because neither his transfer, corrective consultations, records of counseling, a plan of action, the requirement to attend training, nor any of the other alleged actions in the SAC constitute "adverse employment actions" to sustain a discrimination claim under Title VII.  Plaintiff fails to satisfy the fourth prong because Plaintiff fails to identify a similarly situated employee who was treated more favorably.

For the third prong, to establish an adverse employment action in non-retaliation claims, a plaintiff must allege that he suffered "a serious and material change in the terms, conditions, or privileges of employment." *Chapman v. U.S. Postal Serv.*, 442 F. App'x 480, 484 (11th Cir. 2011) (quoting *Crawford*, 529 F.3d at 970-71); *see also Medearis v. CVS Pharmacy, Inc.*, 646 F. App'x 891, 897–98 (11th Cir. 2016) (no adverse employment action where employee "offered no evidence demonstrating that he experienced a tangible consequence such as a loss of pay or benefits, further discipline, or denial of a promotion based on [his] reprimands"); *Shepard v. United Parcel Service, Inc.*, 470 F. App'x 726 (11th Cir. 2012) (transfer from office to warehouse did not involve serious and material change in terms, conditions and benefits of employment); *Davis v. Town of Lake Park Fla.*, 245 F.3d 1232, 1236 (11th Cir. 2001) (no adverse employment where employee received criticism and had his Officer–in–Charge designation removed, but he "did not suffer any reduction in salary, loss of benefits [or] denial of promotions...as a result of these instances."); *McGuire v. Miami-Dade County*, 418 F. Supp. 2d 1354 (S.D. Fla. 2006) (requirement to perform "excessive" job duties beyond the scope of employment position and denials of requests to attend training do not constitute adverse action); *Collins v. Miami-Dade County*, 361 F. Supp. 2d 1362 (S.D. Fla. 2005) (negative performance evaluation review that does not lead to loss in salary, ineligibility for promotional opportunities, or formal discipline is not adverse action); *Madiedo v. Miami-Dade County*, No. 99-1422, 2000 WL 1763845 (S.D. Fla. June 1, 2000) (denial of training that does not cause denial of a promotion, bonus, or other benefit does not constitute adverse employment action).

Here, it is undisputed that none of Plaintiff's alleged employment actions resulted in any loss of pay or benefits. (Defs. Facts ¶¶ 7-25.)  Indeed, Plaintiff ***admits*** that his transfer was rescinded as a result of his grievance, and ***he was fully reimbursed*** upon his return to MRB for the 5% pay supplement that was removed during the two months that his grievance was pending.  (*Id.* ¶ 23.)  Under similar circumstances, the Eleventh Circuit has held that such transfers are ***not*** adverse.

*See Martin v. Eli Lilly & Co.*, 702 F. App'x 952, 957–58 (11th Cir. 2017) ("an employment action is not adverse if the employer rescinds it before the employee suffers any tangible harm.") (citing *Pennington*, 261 F.3d at 1267-68 ("when an employee loses pay or an employment benefit from [an employment action], courts have held that the employment action is not adverse…***when the action is rescinded and backpay is awarded***.")); *Hickey v. Columbus Consol. Gov't*, 372 F. App'x 11, 14–15 (11th Cir. 2010) (the plaintiff's transfer to burglary unit did not result in any tangible harm because the plaintiff's grievance was resolved in his favor) (citing *Pennington*); *Stavropoulos v. Firestone*, 361 F.3d 610, 615 (11th Cir. 2004), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (professor, who filed a grievance to challenge the university's decision not to renew her contract, did not suffer an adverse employment action because the university reversed course and the professor retained her job without losing any pay or benefits); *Shelby v. Am. Colloid Co.*, No. 2:04CV489-T, 2005 WL 3804725, at *5–6 (M.D. Ala. Mar. 1, 2005) (explaining that a plaintiff who was terminated from his job, but, as a result of a grievance process, was fully reinstated with back pay was removed from the protection of the civil rights statues.")

To satisfy the fourth prong, a "comparator" must be similarly situated to the plaintiff "in all material respects." *Lewis*, 918 F.3d at 1224. Although what constitutes a "material" similarity or difference will differ from case to case, a similarly situated comparator generally will have: (1) engaged in the same basic conduct (or misconduct) as the plaintiff; (2) been subject to the same employment policy, guideline, or rule as the plaintiff; (3) been under the jurisdiction of the same supervisor as the plaintiff; and (4) shared the plaintiff's employment or disciplinary history. *Id.* at 1227–28; *see also Forbes v. Wal-Mart Stores, Inc.*, No. 17-81225-CIV, 2019 WL 3859010, at *4 (S.D. Fla. Aug. 16, 2019), *reconsideration denied,* No. 17-81225-CIV, 2019 WL 4540541 (S.D. Fla. Sept. 19, 2019), and *appeal dismissed,* No. 19-13752-HH, 2020 WL 974390 (11th Cir. Jan. 15, 2020) (Scola, J.) ("'a valid comparison will turn not on formal labels, but rather on substantive likenesses.' That is, 'a plaintiff and her comparators must be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'") (citing *Lewis*, 918 F.3d at 1228). "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *McQueen v. Alabama Dep't of Transportation*, 769 F. App'x 816, 822 (11th Cir. 2019) (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)).

Here, Plaintiff has failed to identify a single corporal outside his race within the MRB who worked for the same supervisors as Plaintiff, during the same time frame, who had the same type of non-performance issues and ongoing disruptive behaviors as Plaintiff (Def. Facts ¶¶ 7-25.), and who was not counseled and/or transferred. (*Id.* ¶¶ 37-40.)  On the contrary, it is undisputed that White and/or Hispanic correctional corporals who worked with Plaintiff in the MRB have also received formal counseling like Plaintiff, have received disciplinary suspensions ***more severe*** than Plaintiff's, and have even been transferred out of the MRB, including Corporal Michael Davids (White) and Corporal Cesar Escalante (White Hispanic). (*Id.* ¶ 38.)  Yeber also testified that he has recommended the transfers of Officers Melamed (non-Black), and Pinon (White Hispanic) during his time in the MRB. (*Id.* ¶ 39.)

Thus, there is no evidence of any comparators to support Plaintiff's claim of discrimination. Without presenting evidence of a sufficient comparator, Plaintiff cannot make out the fourth prong of a *prima facie* case of racial discrimination.  *See*, e.g., *Mohamed v. Pub. Health Tr. of Miami-Dade Cty.*, No. 09-21235-CIV, 2010 WL 2844616, at *10 (S.D. Fla. July 19, 2010) (Altonaga, J.) (granting summary judgment to the Trust on Muslim employee's religious discrimination claim because "Mohamed has not identified any non-Muslim comparator who was found reading a newspaper on the job who was not terminated. Because he has not identified a valid comparator, Mohamed has failed to establish a prima facie case of religious discrimination.").

Moreover, the record reveals no other evidence "that would allow a jury to infer intentional discrimination by the decisionmaker." *Herron-Williams v. Alabama State Univ.*, No. 18-10875, 2020 WL 599301, at *6–7 (11th Cir. Feb. 7, 2020) ("Even if a plaintiff cannot produce an adequate comparator, she will survive summary judgment if she presents "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.") (citing *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)); *see also Guerrero v. Miami-Dade Cty.*, No. 13-CV-21374, 2014 WL 2916447, at *4 (S.D. Fla. June 19, 2014) (Williams, J.) (finding that Plaintiff failed to present "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination," where there was "no evidence that supervisors at the Property Appraiser's Office discussed Plaintiff's pregnancy in deciding to terminate her employment, and Plaintiff testified that she never heard…any…supervisors make any negative comments regarding her pregnancy").

11

Indeed, there is no evidence that the decisionmaker for Plaintiff's transfer, Assistant Director Cassandra Jones, who is also African American, had any discriminatory intent towards Plaintiff, nor that Jones ever made a negative comment about Plaintiff's race. (Def. Facts ¶ 42.) Moreover, there is no evidence that anyone else ever made any such comments that were ***related to*** Jones's termination decision. (*Id.*). As such, Plaintiff's discrimination claim must fail. *See, e.g.*, *Herron-Williams*, 2020 WL 599301, at *6–7 (concluding that the plaintiff "has not offered anything close to the mosaic in *Smith;*" even if various administrators may have given her a hard time at work, the plaintiff "has not done enough ***to connect that negative treatment to her race or gender***.") (emphasis added); *Williams v. Hous. Opportunities for Persons with Exceptionalities*, 777 F. App'x 451, 455 (11th Cir. 2019), *cert. denied,* 140 S. Ct. 1113 (2020) (Employee failed to show that he was fired because of his race, in violation of Title VII and § 1981, where statement by employer's executive director evincing discriminatory animus ***bore no relation to termination decision***) (citing *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1229 (11th Cir. 2002) (holding that "a comment ***unrelated to a termination decision***…will usually not be sufficient absent some additional evidence supporting a finding of pretext." (citation omitted) (emphasis added)). Because there is ***no*** evidence that race played ***any*** role in Plaintiff's employment actions, Defendants are entitled to summary judgment on Plaintiff's discrimination claims.

### B. Plaintiff Fails to Establish a *Prima Facie* Case of Hostile Work Environment Based on Race.

To establish a claim of a hostile work environment based on race, an employee must prove that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Mahone v. CSX Transportation, Inc.*, 652 F. App'x 820, 823–24 (11th Cir. 2016) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

To show this, a plaintiff must satisfy the following elements: "(1) that she belongs to a protected group; (2) that she has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008). Even assuming *arguendo* that Plaintiff could establish the first,

12

second, and fifth elements, Defendants are entitled to summary judgment because Plaintiff is unable to prove the third and fourth elements.

As to the third element, there is no evidence that any alleged harassment was based on Plaintiff's race.  For example, Plaintiff alleges that he was formally counseled, given corrective consultations, a plan of action, required to attend training, and temporarily transferred from the MRB.  Even when considered in the light most favorable to Plaintiff, these alleged incidents are not **based on** Plaintiff's race.  At most, Plaintiff's allegations establish mere workplace disagreements about Plaintiff's competence and the adequacy of his job performance. There simply is no evidence other than Plaintiff's utterly conclusory allegations that would tie any of these alleged disagreements to his race.

As to the fourth element, there is no evidence that any alleged comments or conduct were severe or pervasive. The fourth element "includes a subjective and objective component."  *Mahone*, 652 F. App'x at 823–24 (citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999)) (en banc).  In other words, "the employee must personally perceive the harassment as severe and pervasive, **and** the environment must be one that a reasonable person in the employee's position would find hostile or abusive*."  Jones v. City of Lakeland*, 318 F. App'x 730, 735–36 (11th Cir. 2008) (emphasis added).  "'The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'" *Mahone*, 652 F. App'x at 823–24.  In conducting the objective inquiry, the court must consider "the totality of the circumstances" including the following factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating or a mere offensive utterance; (4) and whether the conduct unreasonably interferes with the employee's job performance. *Id.*  Moreover, Title VII is not a "general civility code" that makes actionable ordinary workplace "tribulations." *Id.* (citing *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1234 (11th Cir. 2006)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Here, even if Plaintiff subjectively believed that he was being harassed, Plaintiff's own deposition testimony establishes that he was not subjected to objectively severe or pervasive harassment based on race.  Indeed, Plaintiff testified that the **only** negative comment ever allegedly made concerning Plaintiff's race was when Corporal Escalante informed Plaintiff that he heard

Yeber use the "n-word" while discussing Plaintiff. (Defs. Facts ¶¶ 41.)  Plaintiff ***admitted***, however, that Plaintiff ***never personally heard*** Yeber use the "n-word," that Yeber ***never made any other negative comments*** about Plaintiff's race, and that ***no one else at MDCR*** ever made a negative comment about Plaintiff's race.  (*Id.* ¶ 42.)  Moreover, Chief Johnson's investigation into Plaintiff's complaint revealed that no one besides Corporal Escalante ever heard Yeber use the n-word about Moody.  (*Id.* ¶ 43.)  Thus, there was insufficient evidence to sustain Plaintiff's allegation that Yeber actually used a racial slur to refer to Plaintiff.  (*Id.*)

The Eleventh Circuit has repeatedly held that significantly more egregious comments and conduct were insufficient to establish a hostile work environment claim based on race.  *See, e.g., Singleton v. Auburn Univ. Montgomery*, 520 F. App'x 844, 847–49 (11th Cir. 2013) (concluding that racist comments such as being called "Do Boy," being asked to leave a meeting of supervisors, being told to "watch [his] back" because of his race, while deplorable, were not severe or pervasive enough to create a hostile work environment); *Jones*, 318 F. App'x at 735–36 (concluding that the daily use of racial slurs such as "spook," "nigg," and "monkey," and other derogatory comments at morning meetings, were neither threatening or humiliating, and were insufficient to support a hostile work environment claim); *McCann*, 526 F.3d at 1378–79 (concluding that a white employee calling a black female employee "girl" and two black male employees "boys," and another white employee calling a different black employee a "n—— bitch" over a period of less than three years did not rise to the level of severe or pervasive harassment); *Baroudi v. Sec'y, U.S. Dep't of Veterans Affairs*, 616 F. App'x 899, 904–05 (11th Cir. 2015) (Syrian-born Muslim female physician's allegations were not sufficiently severe or pervasive to support a hostile work environment where supervisor allegedly spoke to her in a demeaning, threatening, and belittling manner on a few occasions, excluded her from and did not respond to emails, made unfavorable office assignments, failed to inform her of meetings or that a medical test was no longer available, denied her leave on one occasion, removed programs from her computer, proposed canceling her Tuesday clinic, her office was unlocked and her papers removed, and her patients were discussed during section meetings; alleged incidents involved petty office squabbles and communication issues that were common in any workplace).

As the cases cited above dictate, Plaintiff's alleged incidents and isolated comment simply do not rise to the level of severe or pervasive harassment based on his race. No reasonable person could find that Plaintiff's ordinary workplace "tribulations" were based on anything other than

14

conflicts about his competence and the adequacy of his patient care. Moreover, no reasonable person could find that the mere one-time use of the "N-word" by a colleague was severe or pervasive at all. This alleged comment was clearly less severe than the racial comments in the foregoing cases where summary judgment was granted for the employer. Accordingly, Defendants are entitled to summary judgment because, at a minimum, Plaintiff fails to satisfy the third and fourth elements of his hostile work environment claim.

## III. THE COUNTY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIMS UNDER TITLE VII AND THE FCRA IN COUNTS I, VI, VII, and VIII.

In Counts I, VI, VII, and VIII, Plaintiff brings a retaliation claim against the County under Title VII and the FCRA.  To establish a *prima facie* case of retaliation under Title VII, Plaintiff must show that: (1) he engaged in a statutorily protected activity, (2) he suffered a materially adverse employment action, and (3) there was a causal relationship between the two events. *Johnson*, 948 F.3d at 1325 (citing *Holifield*, 115 F.3d at 1566); *Callahan v. City of Jacksonville, Fla.*, No. 19-11432, 2020 WL 914923, at *2 (11th Cir. Feb. 26, 2020). "[T]o satisfy the first element, it is sufficient that an employee have a good faith, objectively reasonable belief that his activity is protected by the statute." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998). Under Title VII, the third element requires a showing of but-for causation.  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (holding that Title VII retaliation claims must be proved according to traditional principles of but-for causation, which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer"). As discussed below, Plaintiff also fails to meet the first and third prongs of the *prima facie* test.

As to the first prong, Plaintiff's only alleged statutorily protected activity was his EEOC Charge submitted in October of 2018. (SAC ¶¶ 29, 33); (Def. Facts ¶¶ 31-35.)  None of his other complaints even mention that he believed he was being discriminated against or harassed because of his race. (Def. Facts ¶¶ 26-30); *see also Callahan*, 2020 WL 914923, at *3, n.1 ("Callahan's opposition to the JSO's curfew policy does not qualify as statutorily protected activity because Title VII protects ***only opposition to employment practices prohibited by Title VII***, not illegal conduct generally.") (citing 42 U.S.C. § 2000e-3(a)); *Birdyshaw v. Dillard's Inc.*, 308 F. App'x 431, 436–37 (11th Cir. 2009) (holding that employee was not engaged in any protected activity, thus defeating a

Title VII retaliation claim, based on a letter from the employee to management which "simply described harsh treatment in connection with a work-related dispute," but ***did not claim discrimination on account of any protected ground***); *Coutu v. Martin Cty. Bd. of Cty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995) (grievance did not constitute protected activity because "[u]nfair treatment, ***absent discrimination based on race***, sex, or national origin, is *not* an unlawful employment practice under Title VII"); *Webb v. R & B Holding Co.*, 992 F. Supp. 1382, 1389 (S.D. Fla. 1998) (King, J.) ("It is ***not*** enough for the employee merely to complain about a certain policy or certain behavior of co-workers and rely on the employer to infer that discrimination has occurred.")

As to the third prong, no evidence has been presented to establish a causal connection between any of Plaintiff's complaints and his termination. A plaintiff can satisfy the causation element by showing that "the decision-maker knew of the protected activity, and that a close temporal proximity existed between this awareness and the adverse employment action." *Castillo v. Roche Labs., Inc.*, 467 F. App'x 859, 862 (11th Cir. 2012); *see also Singleton v. Pub. Health Tr. of Miami-Dade Cty.*, 725 F. App'x 736, 738 (11th Cir. 2018); *Grant v. Miami-Dade Cty.*, No. 13-22008-CIV, 2014 WL 7928394, at *8 (S.D. Fla. Dec. 11, 2014), *aff'd sub nom. Grant v. Miami-Dade Cty. Water & Sewer Dep't*, 636 F. App'x 462 (11th Cir. 2015) (Scola, J.). In the Eleventh Circuit, it is well-settled that, "in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). Here, Plaintiff fails to establish causation for both these reasons.

First, although Plaintiff may have complained to several people about workplace issues, there is no evidence that he ever complained about unlawful discrimination ***to Assistant Director Cassandra Jones***, the decision-maker responsible for Plaintiff's transfer from the MRB. (Def. Facts ¶ 19.) Thus, there is no evidence that Ms. Jones was aware of any discrimination complaints when she decided to transfer Plaintiff. *See Thomas v. Miami Dade Pub. Health Tr.*, 369 F. App'x 19, 23 (11th Cir. 2010) ("Thomas's attempt to establish a *prima facie* case of retaliation fails. The Trust submitted uncontroverted evidence it did not have notice or knowledge of the filing of Thomas's EEOC charge at the time of her suspension.").

Second, Plaintiff's retaliation claim fails for lack of close temporal proximity between his alleged complaints and his termination. Plaintiff testified that provided a statement to Mr. Griffith

in 2016. (Def. Facts ¶ 26.) Yet, Plaintiff was not transferred until April 17, 2018, at least **two years** later. (Def. Facts ¶ 19.) This two-year period is insufficient to establish a causal connection as a matter of law. *See Thomas*, 506 F.3d at 1364 (**three to four month disparity** between the statutorily protected expression and the adverse employment action is not enough); *see also Grant*, 636 F. App'x at 468–69 (citing *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (**three to four months** between the protected activity and the adverse action **is too attenuated** to show a causal connection absent other evidence)); *Wellons v. Miami-Dade Cty.*, No. 13-20574-CIV, 2014 WL 2047779, at *17 (S.D. Fla. Feb. 25, 2014), *aff'd,* 611 F. App'x 535 (11th Cir. 2015) (Altonaga, J.) (**four to six month** period insufficient).[3]

Based on the foregoing, Plaintiff fails to establish the first element because it is undisputed that Plaintiff did not engage in protected activity. Plaintiff fails to establish the third element because the County's decision-maker had no knowledge of any protected activity before transferring Plaintiff, and there is a lack of close temporal proximity between Plaintiff's alleged complaints and his transfer. Accordingly, Plaintiff fails to state a *prima facie* case of retaliation and the County is entitled to summary judgment on Counts I, VI, VII and VIII.

## IV.    PLAINTIFF FAILS TO ESTABLISH THAT DEFENDANTS' LEGITIMATE, NON-DISCRIMINATORY, NON-RETALIATORY REASONS FOR ITS ACTIONS PLAINTIFF ARE PRETEXTUAL.

In an action alleging employment discrimination under Title VII, the defendant may rebut plaintiff's *prima facie* case of employment discrimination or retaliation simply by articulating at least one legitimate, non-discriminatory reason for its action. *Johnson*, 948 F.3d at 1325. "This intermediate burden" to produce a legitimate, non-discriminatory reason "is exceedingly light." *Holifield*, 115 F.3d at 1564. Indeed, the employer's "burden is **production** not persuasion," and "the ultimate burden of persuasion remains at all times with plaintiff." *Watkins v. Sverdrup Tech., Inc.*, 153 F.3d 1308, 1314 (11th Cir. 1998). Furthermore, "[an] employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Johnson*, 948 F.3d at 1329 (citing *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984).

---

[3]  *See also Bello v. Miami-Dade Police Dep't/Miami-Dade Cty.*, No. 19-22042-CIV, 2019 WL 4674636, at *2 (S.D. Fla. Sept. 25, 2019), *appeal dismissed,* No. 19-14328-DD, 2019 WL 7790429 (11th Cir. Dec. 11, 2019) (Scola, J.) (dismissing complaint for failure to allege close temporal proximity between EEOC charges and alleged adverse actions).

Even assuming *arguendo* that Plaintiff could establish a *prima facie* case of discrimination or retaliation (which he cannot for the reasons previously discussed), Defendants have proffered legitimate, non-discriminatory, non-retaliatory reasons for counseling Plaintiff, issuing a plan of action, requiring him to attend a training class, and initially transferring him from the MRB, namely, Plaintiff's negative job performance and failure to follow instructions from his supervisors. (Def. Facts ¶¶ 7-25.)  For these reasons, Plaintiff's supervisors attempted to assist Plaintiff in improving his performance, and ultimately decided that he was not a good fit for the MRB. (*Id.*) Thus, Defendants have satisfied their "exceedingly light" burden.  For this reason alone, and in the absence of any evidence of pretext, Defendants' motion for summary judgment should be granted.

Because Defendants have articulated legitimate, non-discriminatory reasons for Plaintiff's employment actions, the burden shifts back to Plaintiff to produce evidence that the Defendants' proffered reasons are a pretext for discrimination.  *Mitchell v. City of LaFayette*, 504 F. App'x 867, 870 (11th Cir. 2013) (citing *Watkins*, 153 F.3d at 1314).  "To demonstrate pretext, the plaintiff must show both that the employer's proffered reason is false, and that discrimination was the real reason." *Id.*  "The plaintiff must meet the employer's reason head on and rebut it, and may not simply quarrel with the wisdom of the reason." *Id.* at 870–71.  "He may do this either directly by establishing that a discriminatory reason more likely than not motivated the employer, or indirectly by showing that the proffered reason is unworthy of credence."  *Id.* at 871 (citing *Watkins*, 153 F.3d at 1314). "Under the latter approach, the plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered reason that a reasonable factfinder could conclude that it is unworthy of credit."  *Id.*  Courts "are not in the business of adjudging whether employment decisions are prudent or fair," and are solely concerned with "whether unlawful discriminatory animus motivate[d] a challenged employment decision." *Id.* (citing *Damon v. Fleming Supermarkets Of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999)). "[Courts] do not sit as a super-personnel department that reexamines an entity's business decisions." *Id.* (citing *Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1501 (11th Cir. 1991)). "The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance." *Id.* (citing *Holifield*, 115 F.3d at 1565)).

Here, there is a complete lack of any evidence to support a pretext argument, and a complete lack of evidence pointing to anything other than Plaintiff's negative job performance and failure to follow instructions from supervisors as the motive for Plaintiff's corrective consultations and

transfer.   To the contrary, the decisions were based on legitimate, non-discriminatory reasons. Indeed, even Director Junior's decision to rescind Plaintiff's transfer required Plaintiff to attend the training course as he had been instructed by his supervisors, and to continue improving his performance.   At best, Plaintiff may argue that the decision was not "prudent or fair," but he cannot adduce any evidence to establish that the reasons were a pretext for discrimination.   *See id.*; *see also Margolis v. Pub. Health Tr. of Miami-Dade Cty.*, 89 F. Supp. 3d 1343, 1353–54 (S.D. Fla. 2015) (Martinez, J.) (finding that Plaintiff failed to show pretext and concluding that "Jackson's business judgment—its decision to restructure the medical directors in the cardiology department and hire new doctors—does not concern this Court" because the Court does "not sit as a super-personnel department that reexamines an entity's business decisions"); *Guerrero*, 2014 WL 2916447, at *5 (Williams, J.) (granting summary judgment where Plaintiff failed to meet her burden to show that the County's proffered reason for her termination was pretextual); *Johnston v. Miami-Dade Cty.*, Case No. 16-cv-20416-KMW, (S.D. Fla. July 21, 2017) (Williams, J.) (granting summary judgment where "Plaintiff has not cited to any evidence to 'cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct.'") (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

## V.   THE COUNTY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS THAT ARE OUTSIDE THE SCOPE OF HIS EEOC CHARGE AND TIME BARRED.

In his SAC, Plaintiff alleges incidents that occurred as far back as December of 2016.  (Def. Facts ¶ 33.)  Plaintiff, however, did not file an EEOC Charge until October 2, 2018, and stated that the *earliest* date that discrimination or retaliation took place was April 1, 2018, which is when Plaintiff was initially transferred from the MRB (*Id.* ¶ 32). According to Plaintiff, the *latest* date of any discrimination was October 2, 2018.  (*Id.* ¶ 34).  Accordingly, Plaintiff has failed to exhaust administrative remedies regarding any specific conduct that occurred before April 1, 2018, or after October 2, 2018.  (*Id.* ¶ 38.)

To bring suit for discrimination under Title VII, a plaintiff first must exhaust administrative remedies.  In a deferral state such as Florida, Plaintiff may sue on acts of discrimination included in *and* predating the EEOC charge by *up to 300 days*, which in this case would mean *December 6, 2017*. *See, e.g.*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Maynard v. Pneumatic Prod. Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001); *Cotton v. Martin Cty., Fla.*, 306 F.

Supp. 2d 1182, 1185 (S.D. Fla. 2004), *aff'd,* 125 F. App'x 977 (11th Cir. 2004) (Moore, J.); *Rizo v. Alabama Dep't of Human Res.*, 228 F. App'x 832, 835 (11th Cir. 2007) ("Failure to file a timely charge with the EEOC results in a bar of the claims contained in the untimely charge.").

Here, Plaintiff is barred from suing for any discrete acts of discrimination that occurred before April 1, 2018, because any such claims are outside the scope of his EEOC Charge, time-barred, and not properly exhausted.  (Def. Facts ¶¶ 31-36.)  Accordingly, the County is entitled to summary judgment on these claims. *See National R.R. Passenger Corp.*, 536 U.S. at 110 ("A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge ***within…300 days*** of the date of the act or lose the ability to recover for it.") (emphasis added); *Thomas*, 369 F. App'x at 22–23 (granting summary judgment to the Trust regarding "any other acts of retaliation that occurred prior to the date of the EEOC charge that were not included in the charge" because they "were not exhausted and could not be considered by the district court.").

## VI.   PLAINTIFF IS NOT ENTITLED TO PUNTITIVE DAMAGES AGAINST DEFENDANTS YEBER AND JOHNSON.

42 U.S.C. §1981a(b)(1) authorizes a prevailing plaintiff to receive punitive damages if the plaintiff "demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  *Goldsmith v. Bagby elevator Co.*, 513 F.3d 1261, 1280 (11ht Cir. 2008) ("Malice or reckless indifference is established by a showing that the employer discriminated in the face of the knowledge that its actions would violate federal law.") (internal quotation marks omitted).  Examples of conduct that could support a punitive damages award include: "'(1) a pattern of discrimination, (2) spite or malevolence, or (3) a blatant disregard for civil obligations.'"  *Id.* (quoting *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1322-23 (11th Cir. 1999)).  If the Defendant prevails on a "same decision" defense, the jury can award no punitive damages.  42 USC § 200e-5(g)(2)(B).

This record is devoid of any evidence that Defendants intentionally deprived Plaintiff of his civil rights.  It is undisputed that the decision-maker for the transfer, Assistant Director Cassandra Jones, made an independent decision without regard to Plaintiff's race. Yeber and merely tried to help Plaintiff improve his job deficiencies.  Moreover, Plaintiff is unable to rebut Defendants' legitimate, non-discriminatory reasons for their actions.  Accordingly, Plaintiff is not entitled to ***any*** damages from Defendants Yeber or Johnson, much less punitive damages.

## CONCLUSION

For the foregoing reasons, Plaintiff has failed to establish a *prima facie* case of race, discrimination, hostile work environment, or retaliation, and Plaintiff has failed to show that the Defendants' legitimate, non-discriminatory, non-retaliatory reasons for their actions were pretextual. Without question, the factual evidence in this case confirms that Plaintiff's race did not play any role whatsoever in any decision made with respect to his employment. Additionally, Plaintiff includes claims that are not properly exhausted and are time-barred. Finally, Plaintiff is not entitled to punitive damages against Defendants. Therefore, Defendants respectfully request that the Court grant their motion for final summary judgment.

Dated:  October 16, 2020                    Respectfully submitted,

                                            ABIGAIL PRICE-WILLIAMS
                                            MIAMI-DADE COUNTY ATTORNEY

                            By:     *s/Marlon D. Moffett*
                                    Marlon D. Moffett (Florida Bar No. 21883)
                                    Email:  mdm2@miamidade.gov
                                    Miami-Dade County Attorney's Office
                                    Stephen P. Clark Center
                                    111 NW 1st Street, Suite 2810
                                    Miami, Florida 33128
                                    Telephone:  (305) 375-5151
                                    Attorney for Defendants

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served by CM/ECF on October 16, 2020, on all counsel or parties of record on the Service List below.

                                    *s/Marlon D. Moffett*
                                    Assistant County Attorney

*Andre L. Moody v. Miami-Dade County et al.*,
19-CIV-24638-GRAHAM/MCALILEY

**SERVICE LIST**

Alejandro F. Garcia, Esq.
E-mail:  agarcia@rgmlawfirm.com
W. Clint Moore, Esq.
E-mail:  cmoore@rgmlawfirm.com
Will B. Ramhofer, Esq.
E-mail:  wramhofer@rgmlawfirm.com
RAMHOFER GARCIA & MOORE, PLLC
11900 Biscayne Blvd., Suite 742
Miami, Florida 33181
Telephone: (305) 481-9733

Igor Hernandez, Esq.
E-mail:  ihernandez@chglawyers.com
E-mail:  info@chglawyers.com
CORNISH HERNANDEZ GONZALEZ
2525 Ponce de Leon Blvd., Suite 300
Coral Gables, FL 33134
Telephone: (305) 501-8021
Attorneys for Plaintiff
*Served via Email*

Marlon D. Moffett, Esq.
E-mail:  mdm2@miamidade.gov
E-mail:  melvyp@miamidade.gov
Miami-Dade County Attorney's Office
Stephen P. Clark Center
111 NW 1st Street, Suite 2810
Miami, Florida 33128
Telephone: (305) 375-5151
Attorney for Defendants
*No service made*